# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | **01 C 9842** | **DATE** | September 25, 2003 |
| **CASE TITLE** | USA ex rel Frank Moore   v   N.L. Conner, Warden | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Hearing

(5) ☐ Status hearing

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]

Memorandum opinion and order entered. Accordingly, the instant petition for habeas corpus is denied in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 29 2003 | 20 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | U.S. DISTRICT COURT CLERK | date mailed notice | |
| | | 03 SEP 26 PM 3:00 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. | ) | |
| FRANK MOORE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No.    01 C 9842 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| N.L. CONNER, Warden of Leavenworth Prison, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Frank Moore filed the instant habeas corpus petition pursuant to 28 U.S.C. § 2241, after the National Appeals Board of the United States Parole Commission affirmed the revocation of petitioner's parole. For the reasons stated herein, the instant petition is denied in its entirety.

## FACTS

In March 1998, petitioner was paroled from federal prison after serving ten years of a twenty-year sentence for armed robbery. In October 1998, petitioner was arrested for the murder of Gary Horton, whose burned and charred body was found alongside a gravel road in rural Lake County, Illinois. Although petitioner denied any role in Horton's murder, it is undisputed that, on the night of August 15, 1998, petitioner and his friend, Etta Bunch, drove Horton to Round Lake to visit Shevon Kennedy, a married woman with whom Horton was having an affair. Horton was never seen again until his remains were discovered approximately one month later.

At trial, the prosecution did not produce any physical evidence linking petitioner to Horton's murder. Rather, the prosecution's case centered on the testimony of Bunch and a jailhouse informant named Jimmie Crawford. According to Bunch, after she, Horton and petitioner arrived at Kennedy's

20

house and discovered she was not at home, they went to Laura Devine's house, and then back to Kennedy's house where Bunch and petitioner left Horton before returning to Chicago. Bunch testified that, on the night of August 15, 1998, she took six valium pills, and slept in the back of the van most of the ride back to Chicago.

Bunch's statements to police and her testimony at trial were inconsistent with respect to the events that occurred during the return car ride to Chicago. For example, in various statements to police, Bunch stated that she was sleeping in the van when she heard two or three bangs, at which time petitioner was standing alongside the van. In another statement, she implied that she heard the bangs while the car van was moving. At trial, Bunch could not say for certain whether or not the van was moving when she heard the bangs, however.

Similarly, in some statements to police, Bunch indicated that she remembered hearing voices in the van after having dropped off Horton at Kennedy's house, at one point thinking that she heard petitioner arguing with Horton, but then realized that it was voices on the radio. At trial, she testified that she thought she had heard voices, but when she woke up, she realized that petitioner was the only other person in the van. In both her statements to police and her trial testimony, Bunch noted that, at one point, she saw a flickering light in the driver's side exterior mirror. At trial, she stated that she was unsure whether it was a reflection of a lit cigarette or a campfire.

Crawford, a jailhouse informant, testified that petitioner confessed to him that he shot Horton three times and then burned the body. He also stated that defendant told him that he had done some bodywork on the van and repainted it to cover up some bloodstains.[1] Crawford was in custody in

---

[1]Two other witnesses testified that the van, which was originally brown, was painted black in mid-July 1998, prior to Gary Horton's murder. One of those witnesses, however, had
(continued...)

Lake County Jail on charges of aggravated criminal sexual assault and abuse against an underage victim, and faced a possible sentence of more than 150 years.

The jury convicted petitioner of murder, and he was sentenced to 50 years in prison. On November 28, 2000, however, the Illinois Appellate Court reversed that conviction, Ill. App. Ct. No. 2–99–0564, concluding that "[t]he State failed to meet its burden of proving [petitioner] guilty beyond a reasonable doubt." According to the appellate court:

> There is no evidence that Horton was ever again in the car after the vehicle left Kennedy's house for the second time. Without that evidence, we do not see how defendant can be tied to Horton's murder.... It is apparent to us that the jury made certain inferences based on that portion of Bunch's statements and testimony that dealt with events occurring after Horton had been left off at Kennedy's house. These inferences were that defendant stopped the van on an isolated rural driveway off River Road, shot Horton, attempted to burn his body, and then drove off. If there was evidence that Horton had at some point been in the van after being left off at Kennedy's house, then we would accept these inferences and affirm the conviction. However, that was not the evidence. The jury clearly gave no weight to Bunch's uncontested and uncontradicted statements and testimony that the last time she actually saw Horton was when was when he was walking up to Kennedy's house. Under these circumstances, there are no uncontradicted facts from which the jury could infer Horton returned to the car.

The appellate court further noted that Jimmie Crawford's testimony was "so untrustworthy it cannot be used to support defendant's conviction.... Crawford's motive for fabricating testimony against defendant was simply too strong to make his testimony believable."

The State's Petition for Leave to Appeal to the Illinois Supreme Court was denied on April 4, 2001. On May 10, 2001, petitioner was released from state to federal custody.[2]

_____

[1](...continued)
previously told police that the van was repainted in mid-August. Further, in her first statement to police, Bunch testified that the van was brown on August 15, 1998.

[2]The Commission had lodged a detainer against petitioner in November 1998, which was
(continued...)

On September 14, 2001, the United States Parole Commission (the "Commission") sent petitioner a letter informing him that it had probable cause to believe that he violated his parole by, (1) using drugs (which he had previously admitted), (2) committing murder , and (3) possessing a firearm (presumably because the murder victim, Gary Horton, was shot to death).

On December 21, 2001, petitioner filed a writ of habeas corpus in the Northern District of Illinois pursuant to 28 U.S.C. § 2241, seeking release from custody on the ground that he was denied due process by the Commission's inexcusable delay in holding his revocation hearing. In that petition, Case No. 01 C 9842, petitioner named Warden Jerome F. Graber as respondent. The revocation hearing was held on April 25, 2002.

At petitioner's revocation hearing, petitioner and Bunch testified on petitioner's behalf and there were no adverse witnesses. According to Bunch's testimony at the April 25, 2002, hearing, the detectives threatened to prosecute her for Horton's murder and told her she would never see her grandchildren again unless she gave them a statement they could use against petitioner. She testified that many of her stated observations regarding voices in the van and flickering lights were not accurate, but that after several days of interrogation, the detectives made her believe that she had observed those things. Bunch also referenced another statement she had made to an investigator for the Public Defender's Office, in which she noted that petitioner told her that Horton was a childhood friend of his, for whom he would do anything, and that Horton's family did not care much for him.

Among other things, at his revocation hearing, petitioner testified that Horton had borrowed petitioner's roommate's bike, which was allegedly then stolen. Petitioner also testified that Horton's

_____

[2](...continued)
executed on May 11, 2001.

4

father called petitioner on August 16th, asking where Horton was, and that he continued to call that week seeking information on Horton's whereabouts.

According to the Revocation Hearing Summary, the hearing examiner also examined two supplementary police reports which contained statements by Horton's sister and friend that Horton was dealing cocaine for petitioner. Petitioner denied that Horton was selling drugs for him, however.

By Notice of Action dated June 3, 2002, the Commission revoked petitioner's parole after finding that, (1) petitioner had used dangerous and habit-forming drugs, and (2) had committed murder and illegally possessed a firearm. According to the Commission's Revocation Hearing Summary, "[T]he one constant in all [Bunch's] statements is her inconsistency regarding the details of the events that occurred on August 15, 1998." The examiner focused on the statement that Bunch gave to police after being read her Miranda rights, believing it to be the most credible of her otherwise inconsistent statements. In that statement, she told police that she heard petitioner and Horton arguing and that she assumed Horton had gotten back into the van. The examiner noted, however, that Bunch did not put that fact in the written statement she prepared for police.

The examiner further noted that, prior to Bunch's statement to police in which she recalled that she remembered hearing two or three bangs, the police were aware of only one spent cartridge at the scene. After Bunch's statement, however, the police returned to the crime scene and discovered a spent cartridge, as well as two full metal copper jacket projectiles in the soil which were fired by the same gun. The examiner noted that lie detector test results verify that Bunch was telling the truth about the two or three loud bangs.

The examiner disagreed with the Illinois Appellate Court's finding that Crawford was not credible. The examiner was persuaded that Crawford's statement to police that petitioner told him

5

that he burned the body after killing Horton was based on information provided by petitioner, since those details had not been made public.[3] The examiner found petitioner's testimony to the contrary to be unbelievable.

The examiner discounted petitioner's statements at the hearing as self-serving. According to the examiner, petitioner's statements that Horton had been abandoned by his family were belied by the evidence, which revealed that Horton's family called petitioner on August 16, 1998, wondering about Horton's whereabouts. The examiner was also persuaded that the van was painted in mid-August, rather than mid-July, supporting Crawford's statement to the police that the van was bloodstained as a result of the murder and petitioner subsequently painted it. The examiner discounted petitioner's theory that, because Horton's sunglasses were located near his body, he must have been killed during the day.

On July 3, 2002, this court dismissed petitioner's habeas corpus petition, without prejudice, "with leave to reinstate after exhaustion of state remedies." Moore's appeal of his parole revocation to the National Appeals Board was denied on October 25, 2002, by which point the Bureau of Prisons had transferred petitioner from the Metropolitan Correctional Center (MCC) in Chicago, Illinois, to U.S.P. Leavenworth, Kansas.

---

[3]Specifically, the Commission concluded, "[T]he [appellate] court did not address the issue that Crawford provided a statement to the police that [petitioner] told him he burned the body after killing Gary Horton. The details regarding the burning of the body had not been made public and there was no way Crawford could have known of that fact unless [petitioner] told him or he was present at the time of the killing. Since he was not there on August 15[th], the only other credible explanation as to how he learned the fact was that [petitioner] told him. Notwithstanding his motive for talking with the police, this crucial fact was true. [Petitioner's] testimony today that he didn't even remember Crawford and did not tell him any details of the offense is not believable. Two of the inmates whom [petitioner] befriended while in custody, Thompson and Collymore, both testified at trial that [petitioner] did discuss the details of this crime when Crawford was present on numerous occasions."

On February 12, 2003, petitioner filed a "Supplemental Petition for Writ of Habeas Corpus" (the "supplemental petition") in Case No. 01 C 9842, naming N.L. Conner, Warden of Leavenworth Penitentiary, as the respondent. In the supplemental petition, petitioner argues: (1) the Commission's decision was not supported by competent evidence; (2) he was prejudiced by the Commission's failure to give him a timely revocation hearing; (3) the Commission's failure to issue its findings within 21 days of the hearing caused "unnecessary stress" to petitioner and erodes respect for the parole revocation process; and (4) he is entitled to good time credits for the time he spent in state custody.

Respondent Graber moved to dismiss petitioner's supplemental petition for lack of personal jurisdiction and, in the alternative, to deny relief on the merits. For the reasons stated herein, the court concludes that it has jurisdiction to hear the supplemental petition, which is denied in its entirety.

## DISCUSSION

1. **Jurisdiction**

Before turning to the merits of the supplemental petition, the court will address respondent's concerns regarding personal jurisdiction. At some point after this court's dismissal of plaintiff's first habeas petition on July 3, 2002, but before the filing of petitioner's supplemental petition, the Bureau of Prisons transferred petitioner to U.S.P. Leavenworth, Kansas. When petitioner subsequently filed his supplemental petition on February 12, 2003, he used the same case number from his first petition, 01 C 9842, but named a different respondent, N.L. Conner, Warden of Leavenworth Penitentiary.

According to respondent Graber (on whose behalf the response to the supplemental petition was filed), this court's July 3, 2002, order in which the court dismissed the original habeas petition "without prejudice with leave to reinstate after exhaustion of state remedies," constitutes a final decision that terminated this court's jurisdiction over petitioner's habeas petition. According to respondent, the supplemental petition is thus a "new" petition which should have been filed in the District Court of Kansas, where petitioner was confined on February 12, 2003. The court disagrees.

Respondent cites to Hanahan v. Luther, 760 F.2d 148 (7th Cir. 1985), for the proposition that a habeas petitioner who has been lawfully transferred to a different jurisdiction cannot keep filing new motions in closed cases. In that case, the petitioner, Hanahan, initially brought a habeas petition in the Northern District of Illinois, which was denied. Hanahan subsequently appealed the district court's decision, which was affirmed on appeal. Hanahan's petition for certiorari was also denied. Hanahan was then transferred to U.S.P. Terre Haute in the Northern District of Indiana. Hanahan subsequently filed another motion in the Northern District of Illinois, seeking an award of sentence credit for the time he had spent on bail. The district court granted partial relief on the merits, but the Seventh Circuit reversed, holding that the lower court lacked jurisdiction to entertain Hanahan's new motion:

> Because the district court's jurisdiction of the original habeas corpus action had long since terminated, and because Hanahan's "motion" cannot properly be characterized as a request for clarification of a previous collateral order of that court, it could only be treated as a new petition for a writ of habeas corpus. Construed as such, it was fatally defective.... The proper respondent was the warden in whose custody Hanahan was held. Id. at 151.

8

The court does not dispute the continued vitality of Hanahan. It is worth emphasizing, however, that the Seventh Circuit's holding in Hanahan was premised on the fact that the petitioner's first habeas petition had terminated prior to the filing of his subsequent habeas petition. In that case, Hanahan had appealed the denial of his first habeas petition to the Seventh Circuit, and subsequently sought certiorari, which was denied, prior to the filing of his second "motion." Thus, the proceedings regarding Hanahan's first habeas petition were unambiguously closed prior to his transfer to Terra Haute, Indiana, and his subsequent filing.

In the instant case, in contrast, petitioner's original habeas petition was dismissed "without prejudice with leave to reinstate after exhaustion of state remedies." According to respondent, "The 'without prejudice' proviso certainly cannot be interpreted as an open-ended retention of the court's in personam jurisdiction notwithstanding [petitioner's] transfer to another judicial district." Respondent's argument, however, ignores the "with leave to reinstate" proviso, which most certainly suggests that this court intended to retain jurisdiction.

Further, and more importantly, respondent fails to adequately distinguish Heirens v. Mizell, 729 F.2d 449 (7th Cir. 1984), cited by petitioner, in which the Seventh Circuit held that a magistrate's order directing the Illinois Parole and Pardon Board to hold a new hearing and to provide a new statement of reasons for its decision was not a final, appealable decision. In reaching that conclusion, the Heirens court noted, "'A final judgment in a habeas corpus case either denies the petition or orders the petitioner released at a specified time.'" Id., at 454, quoting U.S. ex rel. Burton v. Greer, 643 F.2d 466, 469 (7th Cir. 1981). This court's July 3, 2002, order did neither; its dismissal without prejudice and with leave to reinstate was a non-

9

final, non-appealable order. Accordingly, the court concludes that petitioner's first petition was not "closed," and that it has thus retained jurisdiction over petitioner's supplemental petition.

## 2.    The Merits

Respondent's arguments regarding the merits of the Commission's decision are more persuasive, however. The Seventh Circuit has held that, under the mandatory language of the federal parole statute, 18 U.S.C. § 4206(a), an inmate has an expectation of parole that is worthy of due process protection. Solomon v. Elsea, 676 F.2d 282, 285 (7th Cir. 1982). See also Morrissey v. Brewer, 408 U.S. 471, 482 (1972). To that end, an inmate is given the opportunity to present and respond to evidence at a hearing before the Commission may revoke his parole. See 18 U.S.C. §§ 4207 and 4208(d)(2). In the event that an inmate disputes the information presented, the Commission applies a preponderance of the evidence standard. See 28 C.F.R. § 2.19(c) ("If the prisoner disputes the accuracy of the information presented, the Commission shall resolve such dispute by the preponderance of the evidence standard; that is, the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and probability."). It is also worth noting, however, that a parole revocation board is permitted to consider "letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Morrissey, 408 U.S. at 489.

"'It is apparent that Congress intended to give the Parole Commission great latitude in making decisions relative to [parole] revocation.'" Walrath v. Getty, 71 F.3d 679, 684 (7th Cir. 1995) (quoting Luther v. Molina, 627 F.2d 71, 75 (7th Cir. 1980)). Accordingly, when a federal district court reviews the decision of the Commission on a habeas corpus petition, the court's inquiry is whether there is a "rational basis in the record for the [Commission's] conclusions

10

embodied in its statement of reasons." Walrath, 71 F.3d at 684 (quoting Hanahan, 693 F.2d at

632).

In Kramer v. Jenkins, 803 F.2d 896, 901 (7th Cir. 1986), the Seventh Circuit further

explained the scope of judicial review of the Commission's decisions:

> The Commission must have a reason for its decision. The record must show that
> the reason is not fanciful or suppositious. But the Commission need not hold
> adversarial proceedings or have the sort of evidence that would persuade a
> court.... Our review, with only a shadow of the scrutiny available under the
> [Administrative Procedures Act], likewise is confined to the record before the
> Commission and limited to a search for "some evidence" in support of the
> decision.

See also Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445,

455-456 (1985) (Ascertaining whether prison disciplinary board's decision to revoke good time

credits satisfies due process "does not require examination of the entire record, independent

assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant

question is whether there is any evidence in the record that could support the conclusion reached

by the disciplinary board."). With these standards in mind, the court is compelled to uphold the

Commission's decision to revoke petitioner's parole.

As described above, the record before the Commission included evidence that Horton

was dealing drugs for petitioner, that petitioner was with Horton on the night of the murder, and

that petitioner repainted his van in mid-August. With respect to Crawford, the parole hearing

examiner adjudged his testimony to be credible and consistent with other evidence adduced at

trial and the parole revocation hearing. The Commission determined that the Illinois Appellate

11

Court did not address[4] the fact that the only way Crawford could have known about the burning

of Horton's body was through petitioner, and further noted that petitioner's testimony that he did

not know Crawford was not credible (based on the testimony of two other inmates). Further, the

Commission found that some of the evidence regarding the timing of the painting of petitioner's

van was in accordance with Crawford's testimony at trial that petitioner had to repaint his van

after the murder to conceal bloodstains. The court concludes that the Commission's findings in

this regard were at least minimally rational, and thus will not disturb the Commission's

determination regarding Crawford's credibility.[5]

As for Bunch's various statements to the police and at trial, the Commission determined

that her statement to police after being read her Miranda rights was the most credible. Notably,

the hearing examiner pointed to several inconsistent statements given by Bunch at the revocation

hearing, as well as the fact that Bunch continued to implicated petitioner in a statement to

petitioner's counsel on January 25, 1999, when she was admittedly not pressured by police. The

---

[4]Contrary to petitioner's argument in his supplemental petition, the Commission did not find that the Illinois Appellate Court did not "consider" that evidence, which was part of the record on appeal.

[5]Petitioner's argument that a private investigator interviewed Crawford on January 22, 2003, and learned that Crawford's now-disbarred attorney had told him what to say at trial, does not compel a different result. In a letter dated January 23, 2002, the Commission invited petitioner to request "any adverse witnesses" on his behalf. That letter further indicated that the required witnesses would be subpoenaed to attend the revocation hearing. Not only did petitioner fail to identify Crawford at that time, but in a letter dated April 12, 2002, and addressed to the Commission, petitioner's counsel indicated that he intended to rely on two things at the revocation hearing: the appellate court opinion, and the circumstances of Bunch's interrogation and alleged coercion by the police. The April 12, 2002, letter did not reference Crawford. The Commission's failure to bring Crawford to the hearing thus is not "further evidence that the process was not a search for truth," but rather reflects petitioner's failure to timely identify Crawford as an adverse witness.

hearing examiner further noted that Bunch's statement regarding hearing two or three loud bangs

was consistent with the physical evidence recovered at the location where Horton's body was

discovered, and that Bunch's earlier polygraph examination indicated that she was being truthful

about that statement.

Although much of this evidence is circumstantial, the court is constrained to conclude

that the Commission had "some evidence" to support its decision, and that the reason for its

decision was neither fanciful nor suppositious, but rather was rationally based. Given the

circumscribed standard of review in the instant context, the court may not supplant the

Commission's credibility determinations with those of the Illinois Appellate Court which

reversed petitioner's conviction. Nor is it appropriate for this court to make its own independent

credibility findings or retry the parole revocation hearing. Cf. Hill, 472 U.S. at 455-456.

The Illinois Appellate Court's reversal of petitioner's conviction for Horton's murder

does not compel a different result. 28 C.F.R. § 2.19 (c) provides for revocation of parole when

supported by a preponderance of the evidence, in contrast to criminal proceedings which require

proof beyond a reasonable doubt. See Morrissey, 408 U.S. 471 at 489; Whitehead v. U.S. Parole

Commission, 755 F.2d 1536, 1537 (11th Cir. 1985). Further, Section 2.19 (c) explicitly permits

the Commission to consider "evidence of criminal behavior that has been the subject of an

acquittal in a federal, state, or local court" under specified circumstances. Petitioner's reliance

on the Illinois Appellate Court's reversal of his conviction is thus misplaced.

This court recognizes the counter-intuitive quality of a decision that effectively puts a

man behind bars for alleged criminal conduct for which he has been acquitted. This incongruity

is heightened in the instant case by the Illinois Appellate Court's finding that there was "no

13

evidence" that the victim was with petitioner at the time of the murder. "No evidence" would seem to preclude convicting petitioner regardless of whether the standard of proof is beyond a reasonable doubt or a preponderance of the evidence. Yet, given the statutory language and federal appellate precedent, this court concludes that it has no choice but to uphold the Commission's decision.

The court further concludes that petitioner was not prejudiced by the delay in the hearing. Although petitioner vaguely references Shevon Kennedy's husband as Horton's killer, and argues that the delay in holding the revocation hearing prevented petitioner from obtaining critical evidence regarding Kennedy, the record does not reflect that petitioner investigated this potential lead in a timely fashion. Indeed, to the extent that Shevon Kennedy's husband was the obvious culprit, petitioner's counsel could have pursued that investigative avenue at the trial stage, or certainly prior to the investigative hearing. The suggestion that the delay of the revocation hearing prejudiced counsel's ability to procure that evidence is speculative at best, and not a basis for overturning the decision of the Commission.

Nor does the Commission's delay in issuing its findings merit reversal of its decision. Although the court does not condone the Commission's delay, it is worth noting that the revocation hearing summary that was ultimately tendered to petitioner was a 21-page document that provided a thorough overview of the evidence relied upon and the Commission's reasoning.

Petitioner's last argument is that he is entitled to good time credits for the 31 months he spent in state custody subsequent to the issuance of a federal detainer warrant in November 1998. According to petitioner, the Bureau of Prisons has awarded him good time credits only for the time spent in federal custody, which began on May 10, 2001, and denied him 310 days of good

14

time credit to which he is entitled. In support of his argument, petitioner cites to 18 U.S.C. §

4161 (repealed in 1986), which provides, in pertinent part:

> Each prisoner convicted of an offense against the United States and confined in a
> penal or correctional institution for a definite term other than for life, whose
> record of conduct shows that he has faithfully observed all the rules and has not
> been subjected to punishment, shall be entitled to a deduction from the term of his
> sentence beginning with the day on which the sentence commences to run, as follows:
> ...
> Ten days for each month, if the sentence is ten years or more.

Respondent maintains that petitioner was not in federal custody in connection with his

federal sentence until the Commission's warrant was actually executed (as opposed to issued),

and contends that petitioner's time spent in state custody should not serve as a basis for awarding

federal sentence credit and good time credit under 18 U.S.C. § 4161. In support of his argument,

respondent cites to Boyd v. United States, 448 F.2d 477, 478 (5th Cir. 1971), in which the Fifth

Circuit held that a federal prisoner was not entitled to receive credit toward his federal sentence

for time spent in state custody. In so holding, the Boyd court reasoned that the time the petitioner

had spent in state custody between his arrest and commitment to federal custody was not "in

connection with the offense or acts" for which his federal sentence was imposed because, "at any

time during his pre-trial state custody, he could have been admitted to federal bail by taking

appropriate steps under the Bail Reform Act of 1966, Pub.L. 89-465, 80 Stat. 217." Id. at 478-

479; 18 U.S.C. § 3568 (repealed in 1987). Compare Davis v. Attorney General, 425 F.2d 238

(5th Cir. 1970) (Federal prisoner would be entitled to credit for time spent in state custody if state

officials denied him release on bail solely because of the federal parole violator warrant lodged

(but not executed) against him),

15

The question before the court, then, is whether petitioner's time in state custody resulted solely from the federal warrant lodged against him and thus should count toward his federal sentence. The record reflects that petitioner's murder conviction was not reversed on appeal until November 28, 2000. The State subsequently filed a Petition for Leave to Appeal to the Illinois Supreme Court, which was denied on April 4, 2001. On May 10, 2001, petitioner was released from state to federal custody. In the absence of evidence that petitioner was ordered released from state custody while the State petitioned the Illinois Supreme Court, this court cannot conclude that plaintiff remained in state custody solely as a result of the federal detainer. Rather, it appears that petitioner remained in state custody as a result of the pendency of both his appeal to the Illinois Appellate Court and the State's subsequent petition to the Illinois Supreme Court.

On its face, 18 U.S.C. § 4161 specifically contemplates that a prisoner's entitlement to good time credits begins on "the day on which [his] sentence commences to run." Petitioner's new federal sentence of six years, six months, and four days (2379 days) for violating his parole began on May 11, 2001, the date on which the Commission executed its warrant. Petitioner was given one day of jail credit time due to his being released from state to federal custody one day earlier, on May 10, 2001. BOP concluded that the total statutory good time credit possible under petitioner's federal sentence was 781 days. Because this calculation appears to be consistent with 18 U.S.C. § 4161, and petitioner has not cited any controlling authority to the contrary, the court denies petitioner's request for good time credit for the time he spent in state custody between October 1998 and May 2001.

## CONCLUSION

For the reasons stated herein, the instant petition for habeas corpus is denied in its

entirety.


**ENTER:**     **September 25, 2003**

Robert W. Gettleman
United States District Judge